OPINION
{¶ 1} Defendant-appellant Carl Wilson appeals from his convictions and sentences on six counts of Rape. He contends that his convictions must be reversed because he was denied the effective assistance of counsel at trial. He also claims that the trial court erred by failing to sustain his objections to the State's leading questions posed to the victim and by admitting prejudicial photographic exhibits over objection. He also contends that the trial court erred by designating him a sexual predator without conducting a hearing on the issue. He next claims that he was denied a fair trial because of prosecutorial misconduct and cumulative error. Finally, he contends that his convictions are against the manifest weight of the evidence.
 {¶ 2} We conclude that Wilson's convictions are not against the manifest weight of the evidence. We further conclude that Wilson was not denied the effective assistance of counsel. We conclude that the trial court did not err by failing to sustain objections to leading questions or to the admission of exhibits. Additionally, the record fails to support a finding of prosecutorial misconduct, or cumulative error. However, we conclude that the trial court did fail to provide Wilson notice and the opportunity to be heard on the issue of his sexual offender classification. Therefore, the sexual predator designation is reversed, and that issue is remanded for a hearing. The judgment of the trial court is affirmed in all other respects.
 I {¶ 3} On February 8, 2002, Wilson was indicted on six counts of Rape of a person less than thirteen years of age, by force or threat of force, in violation of R.C. 2907.02(A)(1)(b). Two counts involved digital penetration, two counts involved anal intercourse, and two counts involved cunnilingus.
 {¶ 4} The following facts were adduced at trial. Pruda Douglas met Wilson in 1998. The two became romantically involved, and Wilson moved into Douglas's residence where he resided with Douglas and her five children. The victim is Douglas's daughter.
 {¶ 5} Wilson developed a special relationship with the victim, and treated her differently than he did Douglas's sons. The victim viewed Wilson as a father figure.
 {¶ 6} The victim, prior to Wilson's move to the residence, had developed the habit of sleeping in her mother's bed at night. She continued to do so even after Wilson began to sleep in the same bed. When Douglas would attempt to send the victim to her own room, Wilson would interfere and permit the victim to remain with them. The victim generally slept between Wilson and Douglas.
 {¶ 7} From February, 2001 until May 30, 2001, Wilson engaged in six separate episodes of sexual conduct with the victim. Some of the episodes occurred while Douglas was not present. He put his mouth on the victim's vagina on two occasions; he twice used his finger to penetrate her vagina; and he also twice penetrated her anus with his penis. Some of the incidents occurred while the victim was in bed with Douglas and Wilson. Douglas would feel the victim kicking her and moving around, but would tell the victim to move to Wilson's side of the bed. Sometimes Douglas would awake to find the victim naked even though she had been clothed when she went to bed.
 {¶ 8} On May 31, 2001, Wilson was jailed for a violation of his parole. The victim did not inform anyone about the rapes, because Wilson had grabbed her by the arm and warned her not to tell, would give her "dirty" looks if she started to tell her mother, and because she was afraid that Wilson would hurt her or her family.
 {¶ 9} On November 27, 2001, the victim showed Douglas blood on a piece of toilet paper that she had used. Douglas then noticed "little black things" on the victim's "butt." Douglas took the victim to their family doctor, who examined the victim and referred her to Children's Medical Center (CMC). The doctor also called Children's Services and the police. While at CMC, the victim was diagnosed with genital warts, which were around her anus. She informed the staff at CMC that Wilson had used his finger to penetrate her vaginally. The records from CMC indicate that the finding of genital warts was inconsistent with the history given. Subsequently, the victim informed the police of the rapes. The victim was referred to Ene George, M.D., a gynecologist, for treatment of the warts.
 {¶ 10} After his arrest, Dusty Huff, a Registered Nurse for the Combined Health District of Montgomery County, tested Wilson for sexually-transmitted diseases. During the examination, she observed a cluster of genital warts on his penis.
 {¶ 11} Of relevance to this appeal, during trial the State presented the testimony of the victim, who indicated that Wilson had vaginally penetrated her twice with his finger, placed his mouth on her vagina on two occasions, and that he had placed his penis in her anus twice.
 {¶ 12} The State also presented the testimony of Dr. George. He testified that the victim had contracted the sexually-transmitted disease commonly known as genital warts. He further testified that it is possible for a mother with genital warts to pass the disease to children during childbirth; but he testified that transmission in this manner is rare and that the disease would then usually be found in the child's mouth and throat. He testified that it would be very rare for a mother to pass it to her child's genitalia during childbirth. Dr. George testified that, in his opinion, the genital warts around the victim's anus were the result of sexual transmission. He further testified that the victim could have the warts removed, but that they could recur, since she would have the disease for life.
 {¶ 13} The State also presented the testimony of Linda Ott, a clinical psychologist with CMC. She testified with regard to the common behaviors of children who have been subjected to sexual abuse, and she further testified that the victim's behavior was consistent with having been abused. The State further presented the testimony of Dusty Hoff, a registered nurse with the Combined Health District of Montgomery County, who examined Wilson after he was arrested on these charges. Hoff testified that she was sent to test Wilson for sexually-transmitted diseases, and that while conducting her tests, noted that he had "a cluster of wart-like papillas on the dorsal portion of [his] penis," which appeared to be genital warts.
 {¶ 14} Wilson testified on his own behalf and denied having any sexual conduct with the child. He also testified with regard to his criminal record. Wilson also presented the testimony of Pruda Douglas regarding the fact that she had contracted genital warts prior to the birth of the victim.
 {¶ 15} Following trial, the jury convicted Wilson on all counts. A sentencing hearing was conducted on October 24, 2002, at which time the trial court designated Wilson a sexual predator. From his conviction, sentence and sexual predator designation, Wilson appeals.
 II {¶ 16} Wilson's First Assignment of Error states as follows:
 {¶ 17} "Appellant was denied his constitutional right to effective assistance of counsel and his rights to a fair trial, due process and a reliable determination of his guilt and sentence, as guaranteed by thefifth, sixth, eighth and fourteenth amendments to the united states constitution and Article I, sections 10 and 16, of the Ohio Constitution."
 {¶ 18} Under this assignment of error, Wilson argues that the representation provided by his trial counsel was deficient in numerous respects.
We evaluate ineffective assistance arguments under an analysis derived from Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674. Specifically, for a conviction to be reversed on the basis of ineffective assistance of counsel, the defendant must show "that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different." State v. Honeycutt, Montgomery App. No. 19004, 2002-Ohio-3490.
 {¶ 19} First, Wilson contends that his counsel was ineffective for failing to object to the prosecutor's "inappropriate infusion of emotion into the trial." Specifically, he points to statements made by the prosecutor to the effect that this case is "heartbreaking," "sickening," "revolting," and "disgusting," and to a reference to the fact that the victim would have to tell her future boyfriends or husband that she was raped as a child and that she contracted genital warts. In this argument, he also claims that the prosecutor's reference to him as a predator was improper. Finally, he contends that the prosecutor's statements during direct examination of the victim regarding whether the victim was scared while testifying were improper.
 {¶ 20} As stated in Part VI below, we cannot say that the prosecutor's comments rise to the level of reversible misconduct. We have reviewed the entire trial transcript, which consists of almost three hundred pages, spanning two days of testimony. The prosecutor did make the comments referenced above during opening statement and closing argument, and also asked the child whether she felt safe while on the witness stand However, these comments were few in comparison to the length of the trial. The comments regarding Wilson as a predator were predicated upon the fact that he was a "father-figure" to the child, that he intervened when Pruda Douglas attempted to remove the child from his bed, that he was in a position of power over the child, and that he continued his behavior over a period of time. We cannot say that this reference was inappropriate, given the evidence in this case. Furthermore, it was clear from the record that the child was having difficulty testifying because she was emotionally upset and frightened. Therefore, the prosecutor's few comments assuring the child that she was safe and could continue to testify were not so improper or inflammatory as to render the trial unfair. Moreover, trial counsel may have deemed it unwise to interpose objections to these statements. To have done so would only have drawn the further attention of the jury to them, and to have objected to the prosecutor's reassurances with respect to the child witness's safety might have alienated the jury. Therefore, we cannot say that counsel was ineffective for failing to object to these statements.
 {¶ 21} Wilson next contends that counsel's failure to object to the prosecutor's reference to other bad acts constituted ineffective assistance of counsel. He also claims that his attorney should have objected when the prosecutor "referenced unproven criminal activity not alleged in the indictment," by stating that the rapes happened "night after night after night."
 {¶ 22} We find these arguments to be without merit. Wilson "acknowledges that his criminal history was properly at issue and relevant to this case," but claims that the prosecutor's presentation of the evidence regarding his past incarceration was unfairly prejudicial. As Wilson concedes, the fact of his prior incarceration was placed into issue by the defense as an attempt to discredit the victim's testimony by intimating that she must have been abused by someone else, because Wilson was in jail at the relevant time and, thus, did not have access to her. He also used the evidence with regard to the fact that the victim visited him, and wrote to him, while he was in jail, which he argues belies her claims that he abused her. He also raised the argument that the victim's failure to report the crime while he was in jail belies her claim that she was too scared of him to tell anyone what had happened. It is clear that the defense used this information as part of its trial strategy, and that it therefore opened the door to cross-examination by the State on the matter. We further find from our review of the record that the prosecutor's questioning regarding Wilson's incarceration was minimal, well-constrained, and was used for purposes of establishing time-lines for the rapes. The fact that counsel failed to object to these few references by the State does not render his representation ineffective. Indeed, had counsel objected to the prosecutor's few, and essentially innocuous, questions, which were based upon information he placed in the record, the jury may have reacted adversely.
 {¶ 23} Also, the prosecutor's reference to acts that occurred "night after night" is supported by evidence in the record which indicates that Wilson's six acts of rape against the victim occurred on separate nights, and was therefore not objectionable. Wilson next contends that his attorney was ineffective for failing to object to the prosecutor's leading questions. Specifically, he contends that the prosecutor asked leading questions of the victim, her mother, and of Linda Ott.
 {¶ 24} Our review of the record supports Wilson's claim that the prosecutor did ask some leading questions of the victim. However, we cannot say that the prosecutor's leading questions were improper, given the child's age — twelve, and we cannot say that she improperly influenced the victim's responses. Given the nature of the case, and the youthfulness of the victim, we cannot say that trial counsel was ineffective for failing to object to the leading questions. Furthermore, we find no support in the record for the claim that the prosecutor asked improper leading questions of Pruda Douglas and Linda Ott. Therefore, we conclude that counsel's performance in this regard did not rise to the level of ineffective assistance of counsel.
 {¶ 25} Next Wilson contends that his counsel was ineffective for failing to object to the testimony of the expert witness, Linda Ott. He claims that Ott impermissibly commented upon the credibility of the victim during her testimony.
 {¶ 26} "Evidence relating to behavioral indicators of sexual abuse has commonly and historically been found to be relevant and admissible at trial." State v. Hogan (June 8, 1995), Cuyahoga App. No. ____, 1995 WL 350065. In this case, our review of the record reveals that Ott did not impermissibly comment upon the credibility of the victim, but merely gave her opinion that the child's actions were consistent with those of a child who has suffered sexual abuse. Thus, we conclude that Ott's testimony was not objectionable, and that counsel was not ineffective for failing to object thereto.
 {¶ 27} Wilson also contends that counsel should have objected to the testimony of Dusty Hoff, who stated that she observed what appeared to be genital warts on his penis. Wilson contends that Hoff is not an expert, and that her opinion was therefore inadmissible.
 {¶ 28} Evid.R. 701 provides that if a witness is not testifying as an expert, her opinions must be limited to those "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 29} In this case, the record shows that Hoff is a registered nurse who had worked in the Combined Health District's Sexually Transmitted Disease (STDs) Clinic for more than two years. She had received specialized training in STDs, and she testified that she was familiar with the appearance of genital warts. She further testified that she tested Wilson for STDs by court order.
 {¶ 30} We conclude that Hoff's opinion was premised upon her perception, based upon training and experience, of the appearance of genital warts and was helpful to the determination that Wilson suffered from a STD. Therefore, we cannot say that Hoff's opinion testimony was improper or that counsel was ineffective for failing to object thereto.
 {¶ 31} Wilson next contends that his counsel was not prepared for trial and that counsel failed to zealously represent him. We have found no support for this argument in the record.
 {¶ 32} Finally, Wilson contends that his counsel was ineffective for failing to object to the trial court's designation of him as a sexual predator without a hearing. From our review of the record, as stated in Part V, below, it appears that the trial court did not give either Wilson, or the State, notice or an opportunity to be heard on the issue of Wilson's sexual offender classification. This was error. However, it is not clear from the record whether counsel had any grounds for opposing Wilson's designation as a sexual predator. Moreover, this is an issue that did not require an objection to be preserved for appeal — the failure to have afforded Wilson notice and an opportunity to be heard on the sexual offender classification issue amounts to structural error. Therefore, counsel's failure to object cannot be deemed to have constituted ineffective assistance. In any event, we have determined that this matter must be remanded for a hearing on the sexual offender classification issue, thereby rendering moot the issue of whether Wilson's counsel was ineffective for having failed to request a hearing, or to have objected to the lack of a hearing.
 {¶ 33} We conclude that Wilson has failed to demonstrate that his trial counsel was ineffective. Accordingly, the First Assignment of Error is overruled.
 III {¶ 34} Wilson's Second Assignment of Error provides as follows:
 {¶ 35} "The trial court erred in overruling appellant's objection to leading questioning."
 {¶ 36} Wilson contends that the trial court abused its discretion by permitting "excessive leading questioning that molded the testimony" of the victim.
 {¶ 37} "Evid.R. 611(C) provides leading questions cannot be used on direct examination of a witness `except as may be necessary to develop his testimony.' The exception `* * * is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court.' State v. Rector,
2002-Ohio-7442, ¶ 28. The trial court "is in a much better position than we are to gauge when leading questions are necessary to develop a witness's testimony." Id. ¶ 30, citation omitted. "Court's [sic] have continued to emphasize the latitude given the trial court in such matters, especially in cases involving children who are the alleged victims of sexual offenses." Id., citation omitted.
 {¶ 38} The victim was ten and eleven years old when the incidents occurred, and was twelve years old at the time of the trial. It is apparent from the record that the victim was scared about testifying, and that she needed to be coaxed at times. However, we conclude that the victim's testimony regarding the offenses was not the result of improper leading and that the questioning did not improperly shape the victim's testimony. Instead, it appears that the prosecutor's questions were framed in a leading manner in an effort to overcome her reluctance to testify. Additionally, we find no support for the claim that the victim's testimony regarding the rapes was solely predicated upon the prosecutor's leading questions. Indeed, the victim corrected the prosecutor on occasions when appropriate. We conclude that the trial court did not abuse its discretion when it allowed the prosecution to ask the victim leading questions on direct examination.
 {¶ 39} The Second Assignment of Error is overruled.
 IV {¶ 40} The Third Assignment of Error is as follows:
 {¶ 41} "The trial court erred in admitting prejudicial exhibits over objection."
 {¶ 42} Wilson contends that the trial court erred by permitting the State to introduce a textbook photograph of "warty lesions on male genitalia" and a textbook photograph of "warty lesions on female genitalia and anus." He argues that their prejudicial impact outweighed their probative value.
 {¶ 43} "[A] trial court has broad discretion in the admission or exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126, cert. denied (1968), 390 U.S. 1024, 88 S.Ct. 1409,20 L.Ed.2d 281. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 44} Wilson was charged with Rape, which requires the State to prove that sexual conduct occurred. See R.C. 2907.02(A)(1). "Sexual conduct" is defined, in part, as including vaginal intercourse, anal intercourse and cunnilingus. R.C. 2907.01(A). The fact that Wilson had genital warts on his penis, and that the victim also had genital warts, was relevant to the issue of sexual conduct, because it tended to prove that the victim had contracted the sexually transmitted disease as a result of Wilson's sexual conduct.
 {¶ 45} The textbook photograph of the female genitalia was illustrative of the testimony of the victim's treating gynecologist, Dr. George, who testified that the pictures were similar to the appearance of the victim's affected genitalia. Furthermore, the nurse who conducted the examination of Wilson's penis testified that the textbook photograph of the male genitalia with genital warts was a fair and accurate depiction of what she observed on Wilson's penis at the time of the examination.
 {¶ 46} The photographs had probative value in demonstrating the appearance of genital warts on the genitalia of both Wilson and the victim without requiring them to suffer the embarrassment of the jury's viewing of pictures of their actual genitalia. The photographs are neither repetitive nor cumulative. Furthermore, the jury was clearly instructed that the photographs were obtained from a clinical textbook and were not actual photographs of the victim or of Wilson.
 {¶ 47} The photographs were probative, relating to the issue of whether Wilson engaged in sexual conduct with the victim, a jury issue, and their admission was not unfairly prejudicial. Wilson's Third Assignment of Error is overruled.
 V {¶ 48} Wilson raises the following as his Fourth Assignment of Error:
 {¶ 49} "The trial court erred in designating appellant as a sexual predator without holding the required hearing."
 {¶ 50} Wilson contends that the trial court failed to conduct a hearing, pursuant to R.C. 2950.09(B), to determine whether he should be designated a sexual predator.
 {¶ 51} In determining whether a sex offender is a sexual predator, a judge "shall give the offender * * * notice of the date, time, and location of the [sexual-offender-classification] hearing." R.C.2950.09(B)(2). In State v. Gowdy, 88 Ohio St.3d 387, 2000-Ohio-355, the Ohio Supreme Court held that this notice requirement is mandatory, that failure to provide such notice constitutes plain error, and that notice of the sentencing hearing is not sufficient notice of the sexual-offender-classification hearing.
 {¶ 52} From the record before us, we conclude that Wilson was not provided with notice of the hearing. The only hearing for which notice was provided was the sentencing hearing and no mention was made in that notice that a sexual offender classification hearing would be conducted at the same time. At the sentencing hearing, the trial court merely announced that it found, based upon a psychiatric examination report, that Wilson was a sexual predator. It does not appear that Wilson, or the State for that matter, was afforded the opportunity the be heard on the issue, as required by R.C. 2950.09(B)(2). Therefore, we find Wilson's argument well-taken; this cause will be remanded for a hearing on the issue of Wilson's sexual offender classification.
 {¶ 53} Wilson's Fourth Assignment of Error is sustained.
 VI {¶ 54} For his Fifth Assignment of Error, Wilson states:
 {¶ 55} "Appellant was deprived of due process and a fair trial through prosecutorial misconduct."
 {¶ 56} Wilson contends that he was denied a fair trial because of the misconduct of the prosecutor. Specifically, he claims that the prosecutor acted improperly by making excessively emotional arguments, referring to Wilson's past criminal record, asking leading questions, and improperly construing the facts.
 {¶ 57} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, citation omitted. Even if a prosecutor's statements are improper, reversal for prosecutorial misconduct is warranted only if it "permeates the entire atmosphere of the trial." State v. Tumbleson (1995), 105 Ohio App.3d 693 at 699, citation omitted.
 {¶ 58} As previously noted, the prosecutor termed this case disgusting, sickening, revolting and heartbreaking. We conclude that these isolated comments, which fairly characterized the criminal acts for which the State offered proof, did not impermissibly taint the entire trial, to the extent that Wilson did not receive a fair trial.
 {¶ 59} The prosecutor also referred to Wilson as a predator, made reference to his past criminal record, and asked leading questions of the victim. However, the reference to Wilson as a predator is supported by evidence offered by the State; the references to Wilson's past criminal record were offered for a legitimate purpose; and, as noted in Part III, above, the leading questions were proper in view of the victim's young age, and her reluctance to testify.
 {¶ 60} Our review of the entire transcript leaves us unpersuaded by Wilson's arguments. We conclude that Wilson has failed to demonstrate, on this record, prosecutorial misconduct rising to the level of reversible error.
 {¶ 61} The Fifth Assignment of Error is overruled.
 VII {¶ 62} Wilson's Sixth Assignment of Error is as follows:
 {¶ 63} "Appellant's convictions were against the manifest weight of the evidence."
 {¶ 64} Wilson contends that his convictions are not supported by the weight of the evidence presented by the State.
 {¶ 65} "In reviewing a judgment to determine whether it is against the manifest weight of the evidence, an appellate court sits as a `thirteenth juror,' reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Reed, Champaign App. No. 2002-CA-30, 2003-Ohio-5413, ¶ 14, citation omitted.
 {¶ 66} First, Wilson claims his conviction on one of the counts involving anal sex was "secured through improper leading questioning" of the victim. Wilson contends that the victim testified that he performed anal sex "like once or twice", and that she would not have testified that he anally raped her more than once absent the prosecutor's leading.
 {¶ 67} The testimony relevant to this issue is as follows:
 {¶ 68} "Q: Did he ever touch your bottom?
 {¶ 69} "A: Yes.
 {¶ 70} "Q: Now, when I say bottom, I'm sort of — I'm gonna be a little gross, but sort of where your bowel — bowel movements come out, do you know what I'm talkin' about?
 {¶ 71} "A: Yes.
 {¶ 72} "Q: In your butt? You understand what I'm saying? Yes?
 {¶ 73} "A: Yes.
 {¶ 74} "Q: Did ever touch you there? [sic]
 {¶ 75} "A: Yes.
 {¶ 76} * * *
 {¶ 77} "Q: * * * What did he touch you with there?
 {¶ 78} "A: His penis.
 {¶ 79} * * *
 {¶ 80} "Q: Would he just rub you with his penis?
 {¶ 81} "A: No.
 {¶ 82} "Q: Okay. What would he do?
 {¶ 83} "A: He would put it inside me.
 {¶ 84} * * *
 {¶ 85} "Q: Did that hurt?
 {¶ 86} "A: Yes.
 {¶ 87} "Q: Did it hurt you the next day?
 {¶ 88} "A: Yes.
 {¶ 89} "Q: Did he just do that once?
 {¶ 90} "A: [Nodding negatively]
 {¶ 91} "Q: No, `cause you're shakin' your head no?
 {¶ 92} "A: He did it like once or twice.
 {¶ 93} "Q: Once or twice. Do you remember him doin' it twice?
 {¶ 94} "A: Yes."
 {¶ 95} From our review of the transcript, we do not find that the victim's testimony was improperly secured through leading questions. Instead, our reading of the testimony reveals that the victim indicated that Wilson had raped her by engaging in anal intercourse more than once, and that the prosecutor was merely attempting to clarify her testimony. Thus, we conclude that this argument is without merit.
 {¶ 96} Wilson next claims that the evidence does not support his conviction because the victim did not exhibit any tearing or bruising indicative of Rape. We also find this argument without merit. The record shows that the victim did not seek medical treatment until approximately five months after the rapes occurred, when blood and warts were observed on her genitalia. According to Dr. George, this was not unusual. In fact, he testified that such acute signs of trauma would not be present so long after the rape provided the victim had properly healed. Therefore, we conclude that the lack of tearing or bruising at the time of the relevant medical examinations does not support a claim that the evidence does not support the conviction.
 {¶ 97} Wilson also contends that the evidence does not support the conviction because he demonstrated that (1) the victim failed to report the rapes in a timely manner, (2) she was motivated to claim that he raped her because of an incident of domestic violence between him and the victim's mother, (3) someone else may have abused the child, and (4) the victim made inconsistent statements to medical personnel.
 {¶ 98} We have reviewed all of these claims, which question the credibility of the victim, and cannot say that they render the convictions improper. We have reviewed the record and conclude that there was ample evidence, that if believed, demonstrates that Wilson engaged in sexual conduct, including cunnilingus, vaginal intercourse, and anal intercourse, with the victim on six separate occasions. We further conclude that the jury did not lose its way in deeming the victim credible and in convicting Wilson. Accordingly, the Sixth Assignment of Error is overruled.
 VIII {¶ 99} The Seventh Assignment of Error states as follows:
 {¶ 100} "The cumulative effect of errors occurring at trial deprived appellant of a fair trial."
 {¶ 101} The Ohio Supreme Court has stated that although a particular error by itself may not constitute prejudicial error, the cumulative effect of the errors may deprive a defendant of a fair trial and may warrant the reversal of his conviction. State v. DeMarco (1987),31 Ohio St.3d 191, paragraph two of the syllabus. "However, in order even to consider whether `cumulative' error is present, we would first have to find that multiple errors were committed in this case." State v.Madrigal, 87 Ohio St.3d 378, 398, 2000-Ohio-448. In light of our findings in the other assignments of error, Wilson's Seventh Assignment of Error is not well-taken and is overruled.
 IX {¶ 102} Wilson's Fourth Assignment of Error having been sustained, and all of his other assignments of error having been overruled, Wilson's classification as a sexual predator is reversed, the judgment of the trial court is affirmed in all other aspects, and this cause is remanded for a sexual offender classification hearing.
BROGAN and WOLFF, JJ., concur.