[Cite as *State v. Howard*, 2015-Ohio-3917.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26360 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-871 |
| v. | : | |
| | : | (Criminal Appeal from |
| EVERETTE E. HOWARD | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of September, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by TIFFANY C. ALLEN, Atty. Reg. No. 0089369, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 209, Kettering, Ohio   45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Everette Howard appeals from his conviction and

sentence for Gross Sexual Imposition and Attempted Rape of a child under the age of thirteen. Howard contends that the State did not present evidence sufficient to sustain the convictions, and that the convictions are against the manifest weight of the evidence.

**{¶ 2}** We conclude there is evidence in the record that, if believed, establishes the elements of each crime charged. We further conclude that the convictions are not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

## I.     The Offenses

**{¶ 3}** The victim, K.R., was born in December 2000 to Mother and Father. The parents divorced on June 23, 2010. Father has a sister, L.R. Howard and L.R. have been in a relationship during all times relevant hereto. The parties stipulated that L.R. leased an apartment on "Walnut Street"[1] in Riverside from August 1, 2008, to August 3, 2009. This residence was a single-story, one-bedroom apartment. The parties further stipulated that from August 1, 2009 to September 2, 2010, L.R. leased a two-story, two-bedroom apartment on "Elm Street" in Riverside. The record contains a stipulation that L.R. leased a house on "Maple Street" in Huber Heights from August 19, 2010 until August 31, 2011. Finally, the parties stipulated that L.R. leased an apartment on "Oak Street" in Riverside from September 2, 2011 to June 3, 2013. Howard lived with L.R. at each of these residences.

**{¶ 4}** K.R. had a close relationship with L.R. and Howard, and would spend time,

---

[1] For purposes of the minor victim's privacy, we have not identified the actual street names in this opinion.

including overnights, at their various residences. At times, K.R. would sleep in the same bed with L.R. and Howard, in between the two adults, with her head by their feet.

{¶ 5} The first time that Howard touched K.R. was at the "Elm Street" apartment during the summer. K.R. had spent the night at the apartment. When she awoke, her aunt had left to go to work, and K.R. was alone in the bed with Howard, who was looking at her. After Howard said "good morning," he pulled K.R. on top of him, grabbed her by the hips, and forced her to "pump" him while he rubbed his penis against her vagina. Tr. p. 320. K.R. was clothed, and Howard was wearing boxer style underwear. Howard had his laptop computer in the bed at the time. He told K.R. to look away as he typed in a web address. Howard then showed K.R. a pornographic video. K.R. then got up and went to the bathroom. Afterward, Howard asked her if she was okay, and made her promise not to tell anyone what had occurred. Another incident occurred in the same residence on the same day. Howard again pulled K.R. on top of him and rubbed his penis against her vaginal area. Both were again wearing clothes.

{¶ 6} Howard next assaulted K.R. after he and L.R. moved to the house on "Maple Street." Howard was in the home office sitting in a chair, drawing a picture for his anniversary with L.R. K.R. was watching him draw when Howard instructed her to get a blanket. When K.R. returned with the blanket, Howard placed it over her head, and pulled her onto his lap. He then pressed his penis against her buttocks, and moved her around on top of him.

{¶ 7} The next assault occurred in the same residence in the bedroom shared by Howard and L.R. Howard and K.R. were on the bed, clothed, when Howard pulled her on top of him. He then got off of the bed, stood beside it, and pulled K.R. to the edge of

the bed. He removed her pants, and flipped her over onto her stomach. Howard pulled his pants down a bit, and pushed K.R.'s underwear to the side. He then grabbed her by the waist and tried to put his penis inside her buttocks. When he failed to penetrate, he flipped K.R. onto her back and tried to force his penis into her vagina over her underwear. Howard also placed his hands on K.R.'s head, and attempted to place his penis into her mouth.

{¶ 8} The next assault occurred in the apartment on "Oak Street," when K.R. was in the residence playing a video game. At that time, Howard was lying on the couch. He pulled K.R. onto his lap and pressed his penis against her vaginal area. Both were clothed. Howard also, on another occasion, pulled his pants down to expose his penis. He then grabbed K.R.'s hands and forced her to rub his penis.

{¶ 9} Eventually, K.R. revealed the abuse to her good friend. A few months later, in November 2011, she informed her mother of the abuse, at which time Mother called the father, and asked him to come over. The matter was discussed, and the parents decided to contact the police. K.R. indicated that she did not disclose every detail of the abuse at that time. She did not discuss the abuse with her parents after that date.

{¶ 10} After the police were contacted, K.R. was examined at Children's Hospital in Dayton, and was interviewed at CARE House. Her father eventually took her to a therapist. The record shows that K.R. revealed more details during the CARE House interview, as well as to the therapist. K.R. testified before a Grand Jury. Of relevance to that testimony, she denied having Howard's penis in her mouth; instead describing it as close to her mouth.

## II.     The Course of Proceedings

{¶ 11} Howard was indicted on September 18, 2013 on an "A" indictment for three counts of Gross Sexual Imposition (under thirteen), in violation of R.C. 2907.05(A)(4). On November 13, 2013, he was indicted through a "B" indictment on two counts of Attempted Rape (under thirteen), in violation of R.C. 2907.02(A)(1)(b) and R.C. 2923.02; two counts of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4); and one count of Kidnapping in violation of R.C. 2905.01(A)(4).

{¶ 12} Howard waived his right to a jury.   Following a bench trial, he was convicted on all counts except Kidnapping.   He was sentenced to a total term of eight years in prison.   Howard appeals.

## III.     Howard's Convictions Are Not Against
## the Manifest Weight of the Evidence

{¶ 13} Howard's First Assignment of Error states:

THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Howard contends that his convictions should be overturned because the testimony of K.R. is not credible.

{¶ 15} When conducting a manifest weight analysis, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 16} Howard first contends that the convictions should be overturned because K.R. was the only one to testify that he touched her inappropriately, and because there were no witnesses who corroborated her testimony. We note that there is no requirement for corroborating testimony in cases involving either Rape or Gross Sexual Imposition. *State v. Kepiro*, 10th Dist. Franklin No. 06AP-1302, 2007-Ohio-4593, ¶ 22. Thus, this argument lacks merit.

{¶ 17} Howard also contends that K.R. had a motive for fabricating the allegations. Specifically, he refers to the fact that K.R. did not like the man her mother had started dating in June 2011. K.R. admitted that she did not like the boyfriend, and was not happy that he took up her mother's time and attention. There is also evidence that just prior to the disclosure of the assaults, K.R. began to act out, by putting rocks on the front walkway with the intention of causing the boyfriend to trip and fall. She also placed rocks in his car, and spit on his car. Finally, when the boyfriend's daughter was visiting, K.R. shut her in a bathroom with the light turned off. Howard claims that all this demonstrates that K.R. was acting "out against the boyfriend in ways that were clearly designed to get her mother's attention and did." He notes that after the disclosure, the mother began to devote more time and attention to K.R.. Thus, he claims that this ulterior motive undermines K.R.'s credibility.

{¶ 18} The credibility of witnesses and the weight to be given to their testimony are primarily matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). The trial court, as finder of fact, heard the testimony of all of the

witnesses and observed their demeanor on the stand, and was therefore in the best position to determine the credibility of those witnesses. *State v. Butt*, 2d Dist. Montgomery No. 22774, 2009-Ohio-6814, ¶ 19. The fact-finder may credit some, part or none of the testimony of a witness. *Id.* We must give substantial deference to the fact-finder's credibility determinations. *State v. Spears*, 178 Ohio App.3d 580, 2008-Ohio-5181, 899 N.E.2d 188, ¶ 12 (2d Dist.).

{¶ 19} We conclude that the trial court, as trier of fact, could have found that K.R. did make up the allegations in order to get her mother's attention. It is also plausible that K.R.'s allegations against Howard were unrelated to the appearance of the boyfriend. The actions taken by K.R., such as putting rocks in the car and driveway, can be viewed as a reaction to the boyfriend that was separate from, and unrelated to, the allegations of abuse against Howard. The childish pranks might be seen as more consistent with how an eleven-year old girl might react to the boyfriend. Furthermore, the record demonstrates that K.R.'s mom met the boyfriend in June 2011. K.R. told her friend about the assaults "very early in the summer," when the friend was "just out of school" for the summer. Tr. p. 27. The trial court could have reasonably found it unlikely that K.R. would fabricate allegations of abuse at the same time that her mom met the boyfriend. In any event, we do not conclude that the trial court lost its way in failing to credit this defense theory; it was acting within its capacity as the trier of fact in rejecting the claim of fabrication.

{¶ 20} Howard also contends that portions of K.R.'s testimony were contradicted by other witnesses. First, Howard notes that he, K.R.'s father, as well as her aunt, L.R., testified that K.R. was never left alone with Howard. He also notes that both he and L.R.

testified that he never wore boxer style underwear, as stated by K.R. He and L.R. testified that it was impossible for Howard to have shown K.R. any pornographic videos on the laptop while in the bedroom because the apartment did not have wireless internet that would have allowed him to access the internet in the bedroom. Next, he contends that K.R. was unable to describe his penis as other than "black," when L.R. testified that it had distinctive "pink circles" on it. He notes that K.R. testified that he assaulted her on the living-room couch when L.R. had gone into the bathroom. According to K.R. the assault ended when L.R. unlocked the bathroom door. However, Howard and L.R. testified that door would not close all the way, so that K.R. could not have heard it unlock. Finally, Howard notes that he and L.R. both testified that they never had K.R. sleep in the bed with them.

{¶ 21} There was conflicting testimony about the bathroom door. But there is evidence that, even if the door would not latch, it would close. Indeed, the father's testimony, while confusing, indicates that the door would close with difficulty, but would not latch. However, he indicated that when the door was re-opened, the latch would click out. Thus, we conclude that despite the fact that L.R. and Howard testified that the bathroom door would not close, there was other testimonial evidence, that of K.R. and her father, upon which the trial court could find that K.R. could have heard a noise when the bathroom door was opened, consistent with her testimony.

{¶ 22} With regard to whether K.R. slept in the bed with Howard and L.R., and whether she was ever left alone with Howard, there was conflicting evidence on these points. K.R. told people that she slept in the bed with her head and pillow at the foot end of the bed in between L.R. and Howard. Her father admitted that he had been made

aware of this arrangement by his ex-wife and her mother. K.R.'s mother testified that she was aware that K.R. had been left alone with Howard when L.R. was not present. Plus, K.R. testified to being alone with Howard. From the evidence in the record, the trial court did not lose its way in deciding to credit K.R.'s testimony.

{¶ 23} With regard to the remaining allegations, specifically the description of Howard's penis, the issue of wireless internet, and what type of underwear Howard wears, there is a conflict between K.R.'s testimony and that of L.R. and Howard. The trial court observed the witnesses, and was in the best position to assess the credibility of their testimony. The trial court found K.R.'s testimony more credible. We conclude that the trial court did not lose its way in so finding.

{¶ 24} We next turn to Howard's claim that K.R.'s testimony is not credible because she gave very little detail about the incidents, and was not able to give any specific dates. We disagree. K.R. was able to describe the details of the assaults. With the exception of two instances, she testified as to the room the offenses occurred in. She testified as to what furniture Howard was on at the times of the assaults. And she was able to tell which assault occurred in which home, thereby giving a specific time-frame for each crime. We do not find that her testimony in this regard was inherently incredible, or that the trial court erred in accepting her testimony.

{¶ 25} Next Howard claims that the evidence shows that K.R. was not credible, because her father testified that she did not act in the manner she should if she had been assaulted, and because he testified that she had given different people differing stories about the assaults. Howard also claims that K.R.'s school grades belie her claims of assault because they did not begin to fall until right around the time she made the

disclosures rather than during the time of the assaults.

{¶ 26} During trial, the father testified that after the assaults, K.R.'s demeanor was "not good," or "indifferent." He testified that based upon his experience as the victim of child sexual abuse, he did not think she exhibited the proper reaction, for a child, to the abuse. He further testified that he did not believe that K.R. was assaulted, because she did not discuss it with him when it was occurring, and because she always appeared to be happy to go over to visit L.R. and Howard.

{¶ 27} The State introduced expert testimony from Dr. Brenda Miceli, that a child who has been a victim of sexual abuse may exhibit a wide range of behaviors, including showing no behavioral difficulties. Miceli also testified that not all children attempt to keep their distance from the abuser, because they are afraid that people will become suspicious and force the child to discuss the problem. She also testified that sometimes a child will cope with the abuse and hope that the abuser stops, rather than taking the risk of losing a positive relationship, such as the one K.R. had with her aunt.

{¶ 28} With regard to the grades, the record indicates that K.R. was a good student who made honor roll in school. However, in fifth grade, her grades began to drop. She testified that after she made the disclosures about the abuse she was not able to pay attention in class.

{¶ 29} We are not persuaded that the trial court erred by discrediting the father's claim that K.R. was not abused because she did not act the way he thought she should. Nor does the timing of her bad grades convince us otherwise, given K.R.'s explanation.

{¶ 30} The father also testified that he thought K.R. had been inconsistent in her

accounts of the assaults, and had given different versions to people. Related to this, Howard claims that K.R.'s accounts were inconsistent, because she failed to disclose the claim that he forced her to perform oral sex upon him when she testified before the Grand Jury, when she met with her therapist for therapy, or when she was interviewed at CARE House.

{¶ 31} The trial court reviewed the testimony before the Grand Jury, and found that the only inconsistency was K.R.'s testimony regarding oral sex. At trial, she testified that she actually had Howard's penis in her mouth for a short time, and that she went to the bathroom to brush her teeth right afterward. The fact that Howard's penis was actually in her mouth was not disclosed until trial.

{¶ 32} There is evidence in this record from Miceli that if believed, indicates that some children of sexual assault initially disclose only minimal information regarding the abuse, but that they provide more details as time progresses. This appears to be consistent with K.R.'s disclosures. We find no other inconsistencies in K.R.'s claims in the record before us.

{¶ 33} It is presumed that the trial court took this inconsistency into consideration. And the record shows that trial counsel made a strategic decision not to pursue the matter by recalling K.R. to the stand once the Grand Jury testimony had been reviewed. Furthermore, we note that Count II of the B-indictment charged Howard with Attempted Rape related to his attempt to force her to perform oral sex upon him. He was convicted of Attempted Rape, not of Rape. Therefore, while we agree that this constituted a significant discrepancy, the trial court was not required to credit K.R.'s testimony in this regard to have found Howard guilty of Attempted Rape.

{¶ 34}  We find nothing in this record to convince us that the trial court lost its way in crediting K.R.'s testimony, and convicting Howard as charged.   Accordingly, the First Assignment of Error is overruled.

### IV.    Howard's Convictions Are Supported by Sufficient Evidence

{¶ 35} Howard's Second Assignment of Error is as follows:

THE  EVIDENCE  WAS  INSUFFICIENT  TO  SUPPORT  THE APPELLANT'S CONVICTIONS.

{¶ 36} Howard contends that the State did not present evidence sufficient to sustain his convictions.   In support, he argues that K.R. did not give sufficient testimony to support the second claim of Gross Sexual Imposition. He further argues that the prosecutor asked leading questions regarding the laptop computer as well as the oral sex incident.

{¶ 37} " '[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), wherein the Ohio Supreme Court stated that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶ 38}** We turn first to the claim that K.R. did not provide sufficient testimony to support the second claim of Gross Sexual Imposition. Gross Sexual Imposition is proscribed by R.C. 2907.05(A)(4), which states that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies; * * * [t]he other person, * * *, is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" is defined as "any touching of the erogenous zone of another person, including the thigh, genitals, buttock, pubic region, or female breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01

**{¶ 39}** K.R. testified that the second incident occurred at the same house as the first incident, which was identified as the "Elm Street" residence. She also testified that it was during a summer day, before her parents were divorced. The evidence shows that the parties stipulated that L.R. lived in that apartment from August 1, 2009 until September 2, 2010. The evidence also shows that K.R.'s parents were divorced June 23, 2010, which narrows the time frame to less than one year. She also testified that they were both clothed when he touched her in her vaginal area with his penis. We conclude that this testimony is sufficient to establish the offense of Gross Sexual Imposition.

**{¶ 40}** Indeed, we have examined the record with regard to all the charges of Gross Sexual Imposition, and find that K.R. adequately described the actions taken by

Howard. The first two counts involved Howard pulling her on top of him and forcing her to rub her vagina against his penis. The third count involved Howard pulling his pants down enough to expose his penis, and then grabbing K.R.'s wrists and forcing her to rub his penis with her hands. The fourth count involved Howard pulling K.R. onto his lap and rubbing his penis against her vagina. Finally, the fifth count occurred when Howard pulled K.R. onto his lap and pressed his penis against her vaginal area. The date of the assaults were narrowed down to specific time frames, and occurred when K.R. was less than thirteen years old. We conclude that there is sufficient evidence to support the convictions for Gross Sexual Imposition.

{¶ 41} We also find sufficient evidence to support the convictions for Attempted Rape, which is proscribed by R.C. 2907.02(A)(1)(b). That statute provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * *(b) the other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). "Attempt" is defined as purposely or knowingly engaging in conduct that, if successful, would constitute or result in the offense. R.C. 2923.02.

{¶ 42} The testimony of K.R. established that Howard tried to insert his penis into

both her vagina and anus on one occasion. It also established that he tried to make her perform fellatio upon him. If believed, this testimony was sufficient to demonstrate that Howard made attempts to perform actions that, if successful, would have resulted in Rape.

**{¶ 43}** Howard next complains that none of the offenses would have been established except for the fact that the prosecutor continually asked leading questions of K.R. "Evid.R. 611(C) provides leading questions cannot be used on direct examination of a witness 'except as may be necessary to develop his testimony.' The exception ' * * * is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court.' " *State v.* Wilson, 2d Dist. Montgomery No. 19618, 2003-Ohio-6229, ¶ 37, quoting *State v. Rector*, 7th Dist. Carroll No. 01AP758, 2002–Ohio–7442, ¶ 28. The trial court "is in a much better position than we are to gauge when leading questions are necessary to develop a witness's testimony." *Id.*, quoting *Rector* at ¶ 30. "Court's [sic] have continued to emphasize the latitude given the trial court in such matters, especially in cases involving children who are the alleged victims of sexual offenses." *Id.*

**{¶ 44}** K.R. was aged nine to eleven when the incidents occurred, and was thirteen years old at the time of the trial. We have reviewed the record, and note that while Howard contends that the prosecutor asked K.R. a leading question about the laptop computer, he failed to make an objection thereto. Furthermore, the prosecutor merely asked K.R. whether she remembered anything about a computer. The question led K.R. to note that Howard had her look at pornographic videos on his laptop. This was not an offense with which the State charged Howard. We find no prejudicial error.

{¶ 45} Howard also complains that the prosecutor asked leading questions with regard to oral sex. A review of the record shows that when K.R. was asked "what do you remember happening in [L.R. and Howard's] room," she responded that he pulled her to the side of the bed "[w]anting me to put my mouth on his penis." Tr. p. 330. A bit later, the prosecutor said "* * * you said he tried to put his penis in your mouth?" Defense counsel objected, noting that K.R. had previously stated that she had put her mouth on his penis, and claiming that the prosecutor deliberately changed the wording. The trial court then stated that it had heard the testimony and overruled the objection. Later on re-direct, the prosecutor asked what Howard did "when his penis was put in your mouth?"

{¶ 46} We conclude that the trial court was aware of the semantics used in testimony, and that it took the semantics into consideration in its deliberations. K.R. testified that she knows what oral sex is, and that Howard forced her to perform oral sex upon him. In any event, Howard was not convicted of Rape with regard to this incident.

{¶ 47} We have reviewed the entire transcript of K.R.'s testimony, and note that while the State did ask leading questions, the trial court sustained objections thereto when defense counsel raised objections. We conclude that the trial court, as the trier of fact, was able to discern when leading questions were improper, and that proper discretion was exercised with regard thereto.

{¶ 48} Howard's Second Assignment of Error is overruled.


## V.    Conclusion

{¶ 49} Both of Howard's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
Tiffany C. Allen
William O. Cass, Jr.
Hon. Dennis J. Adkins