OPINION
{¶ 1} Defendant-appellant, Beth Ann Kitchen, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, terminating an upward deviation in child support. For the reasons stated below, we reverse and remand.
 {¶ 2} Appellant ("Beth") and plaintiff-appellee, Jeffrey D. Kitchen ("Jeff"), were divorced on October 31, 2000. Their nine and a half year marriage produced two children: Virginia, born on March 9, 1992, and Grace, born on January 6, 1994. Grace is severely Butler CA2006-01-013 handicapped, born with cerebral palsy and afflicted with congenital CMV, encephalopathy, and epilepsy. Beth provides continuous care for Grace's extensive medical needs. Grace is unable to speak or walk and is wheelchair-bound. Beth bathes, feeds, and medicates Grace and changes her diapers. Grace attends school daily, where she is accompanied by an assistant. On average, Grace becomes ill while at school three to five days per month. Beth must be available to pick her up on these occasions.
 {¶ 3} Based upon Grace's medical and childcare needs, the divorce decree imposed an upward deviation from the child support guidelines in the amount of $600 per month. Jeff filed an appeal contesting the amount of his child support obligation and this court affirmed the upward deviation. See Kitchen v. Kitchen, Butler App. No. CA2002-12-298,2004-Ohio-1189.
 {¶ 4} In May 2005, Beth filed a motion seeking an additional increased deviation in child support due to a change in circumstances and requesting attorney fees. Jeff filed a cross-motion to reduce child support, terminate the initial deviation, and to compel Beth to seek employment. In September 2005, Beth filed a contempt motion in response to Jeff's failure to report an increase in income to the Butler County Child Support Enforcement Agency ("CSEA").
 {¶ 5} In a November 29, 2005 decision addressing all pending motions, the trial court terminated the deviation after concluding that it was no longer justified. The court also found Jeff in contempt of the withholding order in the divorce decree, and ordered him to pay Beth $500 towards her attorney fees as a sanction. Beth subsequently filed a motion for reconsideration or new trial, which the trial court denied. This appeal followed.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED IN TERMINATING AND NOT ORDERING AN UPWARD DEVIATION FROM THE CHILD SUPPORT GUIDELINES." Butler CA2006-01-013
 {¶ 8} Beth challenges the trial court's termination of the upward deviation as inappropriate because she claims the guideline amount is unjust under the circumstances. Beth argues that there is much evidence, referred to in numerous trial court decisions throughout the history of this case, justifying the initially imposed $600 upward deviation.
 {¶ 9} R.C. Chapter 3119 sets forth the provisions for calculating an obligor's child support payments. The trial court must use the applicable computation worksheet, see R.C. 3119.022 and 3119.023, combined with the basic child support schedule provided in R.C.3119.021. The resultant figure represents the amount of child support due and is rebuttably presumed to be correct. See R.C. 3119.03.
 {¶ 10} In accordance with R.C. 3119.22, the trial court may deviate from this child support calculation where the guideline amount is unjust or inappropriate and not in the best interest of the child. In making this determination, the court may consider the factors enumerated in R.C. 3119.23 and must journalize its factual findings supporting the deviation. Absent an abuse of discretion, a trial court's decision on whether or not to deviate from the child support guidelines will not be reversed. Nienaber v. Hestand (May 17, 1999), Clermont App. No. CA98-12-118, at 4, 1999 WL 326190. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} We find the trial court abused its discretion in terminating the upward deviation in the present matter. In fashioning the October 2000 divorce decree, the trial court ruled that an upward deviation was justified, citing the following factors: the amount of time the parents spent with the children, the disparity in income between the parties, the extraordinary expenses incurred by Grace, Beth's inability to obtain full time employment, Beth's need for relief from the constant stress of caring for Grace, and the benefit Jeff received by sharing living expenses with his girlfriend. Butler CA2006-01-013
 {¶ 12} The court appears to have relied upon an income figure of $56,722 in computing Jeff's child support obligation in the divorce decree. Payments were set at $907 plus an upward deviation of $612 for a total of $1,519 per month. Spousal support, terminable on June 15, 2004, was fixed at $408 per month. This brought Jeff's total support obligations to $1,968 per month.
 {¶ 13} The trial court terminated the upward deviation in its November 29, 2005 decision. At that time, the court established that Jeff's gross annual income had increased from $52,390 in 2002 to $131,381 in 2005. Accordingly, the court granted Beth's motion to increase child support and based the new monthly figure upon an income of $91,761, which represented Jeff's average earnings for the years of 2003, 2004, and 2005. The court found that no income was to be imputed to Beth. Nonetheless, reasoning that the facts justifying the deviation were no longer in existence, the court struck the upward deviation. The court noted that Jeff currently provides medical insurance for his daughters, and pays for 96 percent of all uninsured medical expenses. The court also noted that Beth had not incurred expenses by retaining any daycare assistance, and had not availed herself of state aid or assistance through social services. In accordance with the guidelines, the court set child support at $1,322 per month.
 {¶ 14} We observe that Jeff's child support payments went from $1,519 in 2000 to $1,322 in 2005, even though his income had more than doubled in that time. As stated, Jeff is no longer paying spousal support. In the face of Jeff's exponentially increased financial resources, Beth is left to meet her family's needs on $1,322 per month.
 {¶ 15} While it is true that Beth does not pay for the children's medical insurance and uncovered medical expenses, or in-home care, a number of considerations weigh strongly in favor of an upward deviation in this case. Grace's condition, which is physically and emotionally compromised, involves numerous special needs. See R.C. 3119.23(A) and (M). Butler CA2006-01-013 Grace functions at a cognitive level far below average for her age group. As stated, she requires constant care and has extraordinary medical needs. This care could be eased by the installation of certain equipment in Beth's home, such as lifts and shower chairs, which Beth currently cannot afford. These extensive medical, educational, emotional, speech, and prescriptive needs will continue throughout Grace's life.
 {¶ 16} Also of significance is the sizeable income disparity between the parties. See R.C. 3119.23(G). This is especially noteworthy when considering the relative financial resources and needs of each parent. See R.C. 3119.23(K). Beth's income comes almost entirely from child support, amounting to a gross annual income of nearly $16,000. She is unable to retain employment outside the home due to Grace's constant, demanding needs. In addition, according to trial testimony of Butler County Board of Mental Retardation employee Dennis Beery, certain public assistance is unavailable to Grace due to her age. And, as stated, Beth no longer receives spousal support to help meet her family's needs. Beth is thus left with limited resources with which to provide for herself and her two daughters.
 {¶ 17} In contrast, Jeff's financial situation does not appear so restricted. As noted, the trial court found that Jeff's gross annual income had increased from $52,390 in 2002 to $131,381 in 2005. It is true that Jeff, who now resides in California, provides health insurance for both daughters and pays 96 percent of all uncovered medical expenses. Also true is the fact that Grace has secondary medical coverage through Choice Care. But, according to the record, Jeff is minimally involved in providing care for Grace and does not visit with her often. Also, Jeff presented no evidence that his own financial situation would be compromised if the upward deviation were re-established.
 {¶ 18} Other relevant factors support the upward deviation. See R.C.3119.23(P). Beth receives little assistance from others in caring for Grace and in meeting Grace's many needs. The majority of the stress in caring for this special needs child falls on Beth. Although Butler CA2006-01-013 there was testimony that others have proffered help, Beth asserts that this aid is undependable. In addition, Jeff has little contact with Grace and, as stated, minimally participates in her direct care.
 {¶ 19} We conclude that, under these facts, the upward deviation from the child support guidelines is justified. Beth's first assignment of error is sustained. Accordingly, we reverse the trial court order and remand for a determination of the amount of an upward deviation under the current circumstances.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE TRIAL COURT ERRED IN NOT GRANTING AN AWARD OF ATTORNEYS FEES."
 {¶ 22} Beth argues that the trial court erred in failing to award attorney fees in view of what she claims is a protracted litigation history largely instituted by Jeff. In support of her request for attorney fees, Beth cites the income disparity between the parties, the fact that Jeff lessened his litigation expenses by initially proceeding pro se, and her consistent victories as the case has progressed.
 {¶ 23} In a divorce case, a party seeking attorney fees must establish a financial need and demonstrate that the award is reasonable under the circumstances. Smith v. Smith, Butler App. No. CA2001-11-259,2002-Ohio-5449, ¶ 17. R.C. 3105.73(B) authorizes the trial court to award all or part of reasonable attorney fees and litigation expenses in a post-decree divorce proceeding if the court finds such an award equitable. The statute goes on to state that a court may consider the income and conduct of the parties, as well as any other relevant factors, in making this determination. Id. The court may not consider the parties' assets. Id.
 {¶ 24} The decision whether to award attorney fees is within the sound discretion of the trial court. Carroll v. Carroll, Delaware App. No. 05CAF110079, 2006-Ohio-5531, ¶ 69. After reviewing the record, we find that the trial court abused its discretion in failing to award Butler CA2006-01-013 attorney fees to Beth. The disparity in income and earning potential between the parties is great. See, e.g., Napier v.Napier, Tuscarawas App. No. 2005 AP 05 0030, 2006-Ohio-438, ¶ 118. As noted, Jeff's gross annual income is $131,000; Beth's is $15,000 (originating almost entirely from child support). Had Beth not filed her motions, the court would not have been alerted to the fact that Jeff's income had more than doubled, thus warranting an increase in his child support payments. Also, the evidence does not show that Jeff is unable to pay Beth's attorney fees. See id.
 {¶ 25} The majority of Grace's medical expenses appear to be covered by insurance or by Jeff. However, the fact remains that Beth, the residential parent, uses her meager income to provide for herself and her two daughters. Her lifestyle does not appear to be lavish. In addition, she is prevented from obtaining employment outside the home due to the demands placed upon her in caring for Grace.
 {¶ 26} Under these facts, Beth has adequately established financial need justifying an award of attorney fees. Beth's second assignment of error is sustained. We remand the issue to the trial court for a determination of a reasonable amount of attorney fees to be awarded to Beth.
 {¶ 27} Assignment of Error No. 3:
 {¶ 28} "THE TRIAL COURT [ERRED] (SIC) IN NOT IMPOSING ADDITIONAL SANCTIONS FOR CONTEMPT OF COURT."
 {¶ 29} Beth maintains that the trial court improperly denied her motion for sanctions, including retroactive child support for Jeff's failure to report changes in his income to the CSEA. Beth insists that the $500 amount Jeff was ordered to pay to purge his contempt is a disproportionate sanction where Jeff avoided a potential amount of $400 per month in additional child support for two years.
 {¶ 30} Civil contempt sanctions serve to remedy or coerce and are often used to Butler CA2006-01-013 compel obedience to a court order for the benefit of the complainant. State ex rel. Corn v. Russo,90 Ohio St.3d 551, 555, 2001-Ohio-15. Far from fulfilling any of these purposes, the trial court's contempt order constituted an abuse of discretion. SeeWillis v. Willis, 149 Ohio App.3d 50, 2002-Ohio-3716, ¶ 59. Jeff concedes that he failed to report the increase in income to the CSEA. Thus, the children were admittedly deprived of child support for two years. In addition, the divorce decree provided that Jeff's failure to notify the CSEA in writing of any changes in income may result in his liability for retroactive support.
 {¶ 31} The trial court should have taken these facts into consideration and sanctioned Jeff accordingly for his contempt of the withholding order in the divorce decree. Beth's third assignment of error is sustained.
 {¶ 32} Having reviewed the assignments of error, we reverse the trial court's termination of the upward deviation, its inadequate award of attorney fees, and its failure to impose appropriate sanctions for Jeff's contempt of the withholding order in the divorce decree. We remand this matter to the trial court for a determination of a proper upward deviation, a reasonable award of attorney fees for Beth, and a determination of the proper sanction for Jeff's two years of underpayment of child support in violation of the withholding order.
 {¶ 33} Reversed and remanded.
POWELL, P.J., and WALSH, J., concur.