OPINION
{¶ 1} Appellant, Taira Miller, appeals the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, overruling objections and adopting the decision of the magistrate, which found her children, Antwan, Treyel, Devounte, and Dariyon Miller, dependent and ordered the children committed to the temporary custody of appellee, Ashtabula County Children Services Board. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} In January 2006, Ashtabula Children Services received information that Miller's children were being abused by members of Miller's church, Apostolic Faith Church, Body of Jesus Christ Newborn Assembly.
 {¶ 3} On February 7, 2006, Ashtabula Children Services filed a Verified Complaint for Protective Supervision of Miller's minor children: Antwan (dob 10/18/95), Treyel (dob 10/16/97), Devounte (dob 9/27/99), and Dariyon (12/21/03).[1] The complaint alleged Antwan, Treyel, and Devounte to be abused, as defined in R.C. 2151.031(B), being "endangered as defined in section 2919.22(B)(4) of the Revised Code." Thus, the complaint alleged Antwan, Treyel, and Devounte to have been "[r]epeatedly administered] unwarranted disciplinary measures * * * when there is a substantial risk that such conduct, if continued, will seriously impair or retard [their] mental health or development." R.C. 2919.22(B)(4).
 {¶ 4} The complaint further alleged Antwan, Treyel, Devounte, and Dariyon to be dependent, as defined in R.C. 2151.04(C), their "condition or environment [being] such as to warrant the state, in the interests of the child, in assuming the child's guardianship."
 {¶ 5} On February 14, 2006, Ashtabula Children Services moved the court for certain pre-dispositional orders, including an order that all the children but Dariyon attend Catholic Charities for evaluation and counseling, pursuant to R.C. 2151.33(B)(1)(e) and Juv. R. 13(B)(2)(f); an order for the release of information regarding such evaluation and counseling; an order that the children have no contact *Page 3 
with Pastor Charles Keyes and other members of Miller's church; and an order granting Ashtabula Children Services protective supervision of all four children.
 {¶ 6} On February 14 and 15, 2006, a shelter care hearing was held. At this time, the juvenile court appointed a public defender to represent Miller and appointed a guardian ad litem for the children. The court granted Ashtabula Children Services emergency temporary custody of the children, pending hearing on the complaint, and ordered Children Services to investigate placement of the children with relatives. Miller was ordered not to discuss the case with her children and the children were ordered not to have any contact with members of Miller's church.
 {¶ 7} In March and April 2006, Antwan, Treyel, and Devounte were evaluated by Dr. Sandra B. McPherson, a clinical and forensic psychologist in private practice.
 {¶ 8} On May 8, 2006, an evidentiary hearing was held on Ashtabula Children Services' complaint before a magistrate. At the hearing, Katie Lane, a caseworker for Children Services, testified regarding Children Services' involvement in the case. Lane testified the case began when an anonymous female reported that Devounte had been beaten by members of Miller's church in connection with a fire at Keyes' home. Lane interviewed the children and Miller and learned that the children were being watched, after school, by Miller's mother at Keyes' home.
 {¶ 9} Lane testified that she was familiar with the disciplinary practices employed by Keyes and members of his church. Lane testified that Children Services had taken custody of other children whose parents are members of the church because of abuse and neglect allegations, including eight children of a woman murdered by her husband, also a member of Keyes' church. "All the children have reported that they've been physically hit to cleanse themselves * * * of sins or evil by members of the church *Page 4 
and by Charles Keyes * * *. They've been held under water to cleanse the evil out of them. They believe in spare the rod, spoil the child and then it's been reported that it's been done to an extreme degree."
 {¶ 10} Lane then testified that Miller's children reported similar experiences. Miller, however, claimed that the children were lying and that it was impossible for her to make alternate child care arrangements. Lane concluded the children would not be safe if they remained in Miller's custody.
 {¶ 11} By stipulation of the parties, Dr. McPherson's deposition was entered into the record. McPherson testified as to the results of her psychological evaluation of the three oldest children and to the substance of her interviews with them. These interviews were transcribed and provided to the parties prior to McPherson's deposition.
 {¶ 12} McPherson testified that Antwan suffers from post traumatic stress disorder. Antwan told McPherson that he was "whipped" by Miller, Miller's mother, Keyes, and other members of the church. Antwan differentiated the whippings he received from his mother and grandmother from those he received from Keyes and members of the church. If Miller or her mother whipped him, he would get "three licks." If members of the church whipped him, they would hit him with switches and belts which would leave "red spots or bruises." Antwan reported seeing Keyes throw one of his cousins out of a window. Antwan also reported that he and Devounte were held up by their necks in the shower while others screamed "do you want to die?". Antwan described these experiences as a "kind of torture." McPherson testified Antwan continues to have nightmares about the beatings along with symptoms of anxiety and depression. *Page 5 
 {¶ 13} McPherson diagnosed Treyel as having adjustment disorder with anxiety. Of the three children she interviewed, McPherson testified that Treyel seems to be the least affected emotionally by his experiences. Treyel admitted that he had been forced to hold his shirt up while he was hit with switches or a belt. Treyel denied that he sustained bruises, although he had seen bruises on Antwan and had seen his cousin thrown out of the window.
 {¶ 14} McPherson diagnosed Devounte with post traumatic stress disorder. Devounte reported being beaten, with a board as well as with switches and belts, and being held under water by church members.
 {¶ 15} The children also reported to McPherson that Miller either knew or consented to the discipline they received from members of the church. The children indicated that Miller and other members of the church had told them not to speak about the punishments they had received.
 {¶ 16} McPherson concluded the children's experience of beatings and living in a "terroristic environment" has caused the children "to have significant deficits in their emotional and mental functioning." McPherson further stated the children required psychological treatment.
 {¶ 17} The magistrate found Antwan, Treyel, and Devounte "abused" and Dariyon "dependent" and committed them to the temporary custody of Ashtabula Children Services.
 {¶ 18} On May 22, 2006, Miller filed objections to the magistrate's decision, in which she argued the evidence presented did not meet the standard for a finding of abuse and dependency and that Dr. McPherson's testimony was inadmissible due to her reliance on collateral sources of information. *Page 6 
 {¶ 19} On July 10, 2006, the juvenile court overruled Miller's objections and adopted the magistrate's decision. Miller duly appealed. On October 16, 2006, this court remanded the case for lack of jurisdiction. This court noted "the appealed judgment merely overrules the objections and adopts the magistrate's decision" without independently "finding the children dependent and abused, and ordering that the children be temporarily committed to the Ashtabula County Children Services Board." See In re Castrovince (Aug. 16, 1996), 11th Dist. No. 96-P-0175, 1996 Ohio App. LEXIS 6226.
 {¶ 20} On October 25, 2006, the juvenile court issued a new judgment entry adopting the magistrate's decision and finding Antwan, Treyel, and Devounte to be abused and Dariyon to be dependent. This court again remanded the appeal because the juvenile court's October 25, 2006 judgment entry did not order Antwan, Treyel, Devounte, and Dariyon committed to the temporary custody of Ashtabula Children Services.
 {¶ 21} On November 21, 2006, the juvenile court issued a judgment entry committing Miller's children to the temporary custody of Ashtabula Children Services. Thereupon, this court reinstated Miller's appeal.
 {¶ 22} On appeal, Miller raises the following assignments of error:
 {¶ 23} "[1.] The juvenile court erred by permitting hearsay testimony from the subject children into the adjudicatory hearing absent a showing of Evidence Rule 807 exceptions.
 {¶ 24} "[2.] The juvenile court erred by permitting impermissible hearsay into the proceedings contained in the deposition of Dr. Sandra McPherson." *Page 7 
 {¶ 25} Both of Miller's assignments of error focus on the admission of evidence at the May 8, 2006 dispositional hearing. The trial court possesses broad discretion as to whether to admit or exclude evidence, "so long as such discretion is exercised in line with the rules of procedure and evidence." Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271. When a matter is tried before the court in a bench trial, there is a presumption that the trial judge "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. White (1968),15 Ohio St.2d 146, 151; Columbus v. Guthmann (1963), 175 Ohio St. 282, paragraph three of the syllabus.
 {¶ 26} In her first assignment of error, Miller argues the following statements by the caseworker, Lane, constituted inadmissible hearsay. While discussing the prior removal of children of other members of Keyes' congregation, Lane testified: "All the children have reported that they've been physically hit to cleanse themselves * * * of sins or evil by members of the church and by Charles Keyes * * *. They've been held under water to cleanse the evil out of them. They believe in spare the rod, spoil the child and then it's been reported that it's been done to an extreme degree."
 {¶ 27} On cross-examination, Lane testified that Devounte had told her that Keyes had hit him with a board of nails.[2]
 {¶ 28} Initially, we note that Miller's counsel failed to object to Lane's testimony at both points in question. State v. Childs (1968),14 Ohio St.2d 56, at paragraph three of the syllabus ("[i]t is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been *Page 8 
avoided or corrected by the trial court"). In the second instance, Lane's testimony was in response to a specific inquiry by Miller's attorney. Moreover, Miller did not raise any objections to Lane's testimony in the written objections filed with the juvenile court. Ohio Juv. R. 40(D)(3)(b)(iv). Accordingly, we will consider the propriety of Lane's testimony under a plain error standard of review.
 {¶ 29} In explaining the meaning of "plain error" in civil context, the Ohio Supreme Court has stated, "reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings."Goldfuss v. Davidson, 79 Ohio St.3d 116, 121, 1997-Ohio-401 (citations omitted).
 {¶ 30} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Lane's testimony regarding what other children have reported regarding incidents at Keyes' church did not constitute hearsay, inasmuch as these statements were not admitted for the truth of the matter asserted. Whether other children have been abused by members of Keyes' church is not an issue in the present case. Lane was testifying as to Children Services' involvement in Miller's case. Children Services had received an anonymous allegation that Miller's children were being abused by members of Keyes' church. Lane was explaining Children Services' concerns about the allegation, based on its past involvement with Keyes' church. Lane was merely testifying that there had been other reports of abuse concerning Keyes' church and these reports were consistent with the allegation involving Miller's children. *Page 9 
We must presume the juvenile court magistrate considered Lane's testimony for this purpose.
 {¶ 31} The Ohio Supreme Court has held that testimony is not hearsay, when it "explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities"; "if an out-of-court statement is offered to prove a statement was made and not for its truth"; "to show a state of mind"; and "to explain an act in question." State v. Maurer (1984), 15 Ohio St.3d 239, 262 (citations omitted). Accordingly, testimony offered to explain an individual or an agency's motivation for investigating a matter has not been considered hearsay and/or inadmissible. See State v. Thomas (1980),61 Ohio St.2d 223, 232 ("[t]he testimony at issue was offered to explain the subsequent investigative activities of the witnesses" and "was not offered to prove the truth of the matter asserted"); Williams v.Franklin Cty. Bd. of Commrs. (2001), 145 Ohio App.3d 530, 547 ("[t]he statements at issue were not offered by defendants to prove the truth of the matter asserted, but, rather, were offered to explain the actions of the [Franklin County Children's Services employees * * *[;] [t]he statements were therefore not hearsay * * * and they were relevant, as they pertained to the course of the investigation by [children's services]").
 {¶ 32} Lane's testimony is of this character. Therefore, it was admissible.
 {¶ 33} As to Lane's testimony regarding Devounte's statements about the abuse, not only was this testimony elicited by Miller's own counsel, it was repetitive of the information obtained by Dr. McPherson in her interview with Devounte. Any statements by the children reported by Lane were reported in greater detail by McPherson, who provided transcripts of the interviews to the parties. For these reasons, Lane's *Page 10 
testimony as to statements made by Devounte were harmless and did not rise to the level of plain error.
 {¶ 34} The first assignment of error is without merit.
 {¶ 35} Under the second assignment of error, Miller asserts the admission of Dr. McPherson's deposition into evidence was in error, since her testimony was tainted by her reliance on inadmissible hearsay and collateral sources. Miller relies on this court's decision in In reWalker, 11th Dist. No. 2002-A-0089, 2003-Ohio-799. In Walker, this court held that a trial court committed reversible error by admitting and relying upon a psychologist's report and testimony, which was based almost entirely upon inadmissible hearsay statements. Id. at ¶ 36.
 {¶ 36} The Ohio Rules of Evidence provide that "[t]he facts of data * * * upon which an expert bases an opinion of inference may be those perceived by him or admitted in evidence at the hearing." Evid. R. 703. "Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid. R. 703 has been satisfied." State v. Solomon (1991), 59 Ohio St.3d 124, at syllabus.
 {¶ 37} In the present case, Dr. McPherson's testimony and opinions were based almost entirely on facts perceived by her or admitted into evidence at hearing. McPherson conducted extensive interviews with Antwan, Treyel, and Devounte. These interviews were transcribed and provided to the parties. McPherson was entitled to rely on the information provided by the children under the hearsay exceptions for medical diagnosis or treatment. Evid. R. 803(4). McPherson also relied on various tests she performed on the children, including the Thematic and Perception Test, Rorschach, Wexler Intelligence Scale for Children, and the Wide Range Achievement Test. *Page 11 
McPherson testified that her opinions were based, in whole or in major part, on her own observations, testing, and interviews.
 {¶ 38} Miller argues McPherson also relied on collateral sources of information, including background information on the Miller case provided by Lane. McPherson's reliance on this information, however, is unobjectionable on two grounds. First, Lane testified at the hearing regarding the case history, thus satisfying Evid. R. 703. Second, although this information was available to McPherson, she did not rely on it as a basis for her testimony. McPherson's testimony regarding the allegations leading to Children Services' involvement with the Miller family was derived from the interviews of the children.
 {¶ 39} Finally, Miller argues McPherson relied on prior involvement with children from Keyes' church. McPherson testified she has "been involved in seeing other children that were involved in this church situation and have been removed and have evaluated a number of them so I have * * * a substantial amount of background information in general about the church community." McPherson's prior experience with Keyes' church does not render her testimony inadmissible. To the extent that this prior experience influenced her testimony at all, and there is no indication that it did so, McPherson was entitled to rely on facts and data directly perceived by her.
 {¶ 40} By contrast, the psychologist in Walker relied on the reports, evaluations, and interviews conducted by other persons, not directly perceived by her, and not admitted or admissible in their own right. Accordingly, the present case is easily distinguishable fromWalker. See, e.g. In re Goff, 11th Dist. No. 2004-A-0051,2004-Ohio-7235, at ¶ 39 (distinguishing Walker where the psychologist's testimony was based, in major part, on inadmissible hearsay); accord,In re Paris, 11th Dist. *Page 12 
Nos. 2003-A-0133 and 2003-A-0134, 2004-Ohio-1962, at ¶ 12; In reStillman, 155 Ohio App.3d 333, 2003-Ohio-6229, at ¶ 66.
 {¶ 41} Miller's second assignment of error is without merit.
 {¶ 42} For the foregoing reasons, the decision of the Ashtabula County Court of Common Pleas, Juvenile Division, finding Antwan, Treyel, Devounte, and Dariyon Miller, dependent and ordering the children committed to the temporary custody Ashtabula Children Services, is affirmed.
WILLIAM M. O'NEILL, J., MARY JANE TRAPP, J., concur.
[1] The children have different fathers. Antwan's alleged father, Anthony Hunt, was served by certified mail, unclaimed, and failed to appear. Treyel's alleged father, Brett Schroeder, is deceased. Devounte's alleged father, Rodger Jetter, was served by publication and failed to appear. Dariyon's father, Derrick Martin, was served by certified mail, unclaimed, and publication and failed to appear. "John Doe Biological Fathers" for Antwan, Treyel, and Devounte were served by publication and failed to appear.
[2] Dr. McPherson reported, in great detail, Devounte's account of the "board of nails." This was a board with nails in it, but, Devounte was never hit with that part of the board containing the nails. *Page 1