OPINION
{¶ 1} Defendant-appellant/cross-appellee, Sheri A. Foster-Theurer, appeals a child custody and support decision from the Warren County Court of Common Pleas, Domestic Relations Division. Plaintiff-appellee/cross-appellant, David M. Theurer, cross-appeals. We affirm.
 {¶ 2} The parties in this case were married in 1991 and divorced on February 26, *Page 2 
1998. The marriage produced two daughters, who have been the subject matter of numerous proceedings initiated by both parties over the period following the divorce. Following the divorce, Sheri remarried and had two additional children.
 {¶ 3} The instant appeal is the result of a motion for emergency hearing filed by David on September 27, 2005 regarding the allocation of parental rights and responsibilities for the children. In an accompanying affidavit, David alleged that the children witnessed Sheri and their stepfather engage in a verbal confrontation that escalated into a violent altercation. Sheri and her husband were allegedly yelling at each other, Sheri struck him, and then threw a rock through his car window.
 {¶ 4} During the course of the proceedings, the trial court appointed Dr. David Marcus, "to conduct an examination for the purpose of determining custody/parenting time." The court ordered both parties to "cooperate in scheduling the necessary appointments to complete the evaluation and cooperate fully with the evaluator."
 {¶ 5} While the case was pending before the magistrate, in January 2006, the parties' older daughter called David and requested to be picked up from Sheri's home. Upon arrival, David allegedly noticed visible red marks on her neck. The following day, David initiated a Civil Protection Order, which was in effect for six months.
 {¶ 6} The first hearing in this matter was held on May 25, 2006. In January 2007, David was arrested for operating a motor vehicle while intoxicated. Following several additional hearings, a partial magistrate's decision was filed on March 30, 2007. The magistrate's supplemental decision was filed on June 12, 2007. In the decisions, the magistrate terminated the parties' shared parenting plan, reallocating parental rights and responsibilities to David. The magistrate also addressed child support, child care costs, health insurance, and tax exemptions. The parties each filed objections to the decision. The trial court partially overruled the magistrate's decision and remanded the issues of imputed *Page 3 
income, child support calculation, tax exemptions, and child care expenses.
 {¶ 7} Following additional hearings on the remanded issues, the magistrate issued a decision on February 4, 2008. Both parties filed objections to the decision, which were overruled by the trial court. Sheri timely appeals, raising eight assignments of error. In his cross-appeal, David raises three cross-assignments of error. In the interest of clarity, we will address David's cross-assignments of error out of order.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED IN DENYING MOTHER'S MOTION TO REOPEN EVIDENCE."
 {¶ 10} In her first assignment of error, Sheri argues the trial court erred by denying her motion to reopen evidence of David's OVI conviction.
 {¶ 11} The decision whether to grant a motion to reopen evidence is within the sound discretion of the trial court. Longo v. Longo, Geauga App. No. 2204-G-2556, 2005-Ohio-2069, ¶ 22. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} After review of the record, we find Sheri's assignment of error is moot as any potential error was already cured by the trial court. At the September 18, 2007 hearing, the magistrate allowed Sheri to introduce evidence relating to the OVI. Sheri called the arresting officer and even cross-examined David about the incident. The trial court in its decision stated, "there was no allegation that the OMVI occurred while the children were present making the OMVI not relevant to the custody. The Court herein takes into consideration Father's drinking and OMVI, and while these are a concern, are not of such a nature as to deny him residential parent designation." Clearly, the trial court fully considered evidence of David's OVI conviction in its decision.
 {¶ 13} Sheri's first assignment of error is overruled. *Page 4 
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "THE TRIAL COURT ERRED IN EXCLUDING MOTHER'S HISTORICAL EVIDENCE OF THE CONDUCT OF THE PARTIES."
 {¶ 16} The magistrate in this case limited both parties from introducing evidence which occurred prior to December 28, 2004. In her second assignment of error, Sheri argues that the trial court erred by excluding, and not considering, any historical evidence of the parties. Specifically, Sheri claims that a decision based upon inconsistent and incomplete evidence is contrary to law and "reflects the refusal of the trial court to consider the totality of the circumstances."
 {¶ 17} A decision whether to exclude evidence is within the trial court's sound discretion and will not be reversed absent an abuse of discretion. Weisbecker v. Weisbecker, Butler App. No. CA2005-10-421,2006-Ohio-5840, ¶ 20.
 {¶ 18} Sheri urges that Dr. Marcus relied upon "old events, going back years," yet she was not allowed to introduce evidence that occurred prior to December 28, 2004. However, Sheri fails to identify what historical facts Dr. Marcus relied upon; only making generalized accusations.
 {¶ 19} After review of the record, we find no abuse by the trial court in limiting historical evidence. Evid. R. 403(B) provides, "[although relevant, evidence is not admissible if its probative value is substantially outweighed by consideration of undue delay, or needless presentation of cumulative evidence."
 {¶ 20} The parties have a long history of involvement with the court following their divorce, with numerous accusations and proceedings initiated by both parties over a period of nearly ten years. The historical facts and procedure of the case were well-known to the magistrate and the domestic relations court judge as reflected in the multitude of transcripts in the case at bar. Accordingly, there was no need to reintroduce cumulative facts that were *Page 5 
already known and part of the record.
 {¶ 21} Sheri's second assignment of error is overruled.
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "THE TRIAL COURT ERRED IN ADMITTING EXPERT TESTIMONY."
 {¶ 24} In her third assignment of error, Sheri complains about the involvement of Dr. Marcus, arguing the trial court erred in admitting his report and testimony. A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty.
(1991), 58 Ohio St.3d 269, 271.
 Nature of the Report {¶ 25} As a preliminary matter, we will first address Sheri's claims regarding the nature of the evaluation and report. Throughout her brief, Sheri continually refers to Dr. Marcus and the corresponding report as the "Father's witness" or "Father's report"; believing that Dr. Marcus was David's expert witness.
 {¶ 26} This is incorrect. In this case, David did move for a psychological evaluation. However, rather than order the requested psychological evaluation, the magistrate appointed Dr. Marcus pursuant to Warren County DR Loc. R. 4.6 to serve as an independent witness on behalf of the court to conduct a custody evaluation. Upon an objection by Sheri in this case, the magistrate clearly clarified Dr. Marcus' role and purpose for his report, stating, "the Court appointed Dr. Marcus for the purposes of determining custody/parenting time. This was not an order for a psychological evaluation but rather for a custody evaluation. Mother had an opportunity to present a list of her preferences for the psychologist as Father did. Mother's failure to do so does not necessitate the designation of Dr. Marcus as Father's expert *Page 6 
witness."
 {¶ 27} Specifically, Warren County DR Loc. R. 4.6(A) provides, "[t]he court may appoint a psychologist or psychiatrist to conduct an evaluation on the issues of custody and/or parenting time in order to assist the court in allocating parental rights. The court will allocate the costs of the evaluation between the parties. The psychologist or psychiatrist will be the court's witness and neither attorney shall provide any documents to such person, other than a trial notice, or communicate, or cause any third party to communicate, with the psychologist or psychiatrist."
 {¶ 28} Moreover, Sheri takes issue with the report not technically being a "psychological evaluation." Yet, reports ordered by the court pursuant DR Loc. R. 4.6(A) are for the purpose of "evaluation on the issues of custody." Dr. Marcus' report clearly serves that function.
 Hearsay {¶ 29} Next, Sheri argues that Dr. Marcus' findings were based upon inadmissible hearsay. In this case, the court directed both parties to supply a list of references for Dr. Marcus' evaluation. In compiling his report, Dr. Marcus contacted these references in addition to interviewing the parties, the children and Sheri's husband. In the decision, the magistrate acknowledged relying upon Dr. Marcus' report, stating, "the Court considered Dr. Marcus' report and finds that Dr. Marcus made a very thorough examination of the parties and utilized the psychological tools in his evaluation."
 {¶ 30} "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Evid. R. 703.
 {¶ 31} Sheri's brief on this issue is replete with generalizations and blanket *Page 7 
statements. Sheri fails to identify any statements or findings in the report, later relied upon by the magistrate or trial court, which she believes constitute inadmissible hearsay. Rather, the portions of the report cited and relied upon by the lower court in this case were based upon facts admitted into evidence during the hearings. In re MillerChildren, Ashtabula App. No. 2006-A-0046, 2007-Ohio-2170, ¶ 37. Specifically, the magistrate relied upon Dr. Marcus' conclusions relating to Sheri's "yelling and screaming," "consistent pattern of angry outbursts," and "long standing behavior pattern of escalating anger in response to others disagreeing with her or when she perceives them as disrespecting her or saying things against her." Evidence of each of these findings was introduced and admitted at trial. Specifically, numerous instances of Sheri's yelling, screaming and angry outbursts at both her children and husband were introduced at the hearings.
 {¶ 32} Moreover, prior to Dr. Marcus conducting the evaluation, Sheri objected to several potential witnesses, such as her marriage counselor and the children's services board. The magistrate ruled in her favor, preventing Dr. Marcus from interviewing those witnesses to conform the report within the rules of evidence. There was no prejudice in admitting the report as Sheri provided her own character witnesses for Dr. Marcus to interview, was able to fully cross-examine Dr. Marcus at the hearing, and presented rebuttal witnesses. The portions of Dr. Marcus' report specifically relied upon by the court did not contain hearsay. Rather, all findings attributed to Dr. Marcus in the court's decision were based upon direct testimony.
 {¶ 33} Additionally, the magistrate and trial court did not summarily rely upon Dr. Marcus' recommendations. The court did not follow Dr. Marcus' recommendation regarding supervised parenting time and awarded Sheri more parenting time than prescribed under the standard parenting schedule. *Page 8 
 Timing {¶ 34} Sheri also disputes the timing of the report, claiming filing deadlines were ignored.
 {¶ 35} "The psychologist or psychiatrist will provide the court with the original written report and recommendation * * * no less than seven (7) days prior to the hearing unless otherwise ordered, with copies mailed to counsel for each party, or to a party if unrepresented. The report shall be accepted into evidence as the psychologist's or psychiatrist's direct testimony, and he or she may be subject to cross-examination by either party. A party desiring to cross-examine shall arrange for the psychologist's or psychiatrist's appearance at the hearing and is responsible for paying the fee for that appearance." DR Loc. R. 4.6(B).
 {¶ 36} Sheri argues that her counsel did not receive the report seven days prior to the hearing and could not fully prepare. We find no merit in Sheri's argument as no prejudice exists. A hearing in this case was held on October 30, 2006. At the hearing, the parties acknowledged that the report was dated seven days prior, yet Sheri's counsel objected because he claimed to receive the report only one business day prior to October 30. The magistrate recognized any timing issues and continued the hearing to allow counsel ample time to prepare. On December 29, 2006, Sheri's counsel fully cross-examined Dr. Marcus about the report and presented multiple rebuttal witnesses. Accordingly, we find no prejudice.
 {¶ 37} Moreover, the record demonstrates that much of the delay is attributed to Sheri and her counsel. Specifically, the record demonstrates that Sheri delayed in signing the contract and releases for third-party contacts. Moreover, Sheri's counsel sent a letter to Dr. Marcus, attempting to explain the use of hearsay in the report. As a result, Dr. Marcus temporarily suspended work on the evaluation. *Page 9 
 Bias and Impermissible Contact {¶ 38} Finally, Sheri alleges that Dr. Marcus was biased in his evaluation and David's counsel impermissibly contacted Dr. Marcus in violation with DR Loc. R. 4.6(B). The record demonstrates that the only contact Dr. Marcus had with David's counsel was to secure releases and have the contract signed. Sheri's counsel had similar contact, providing releases and serving as an intermediary in procuring the contract. Additionally, though, Sheri's counsel contacted Dr. Marcus via letter, attempting to advise Dr. Marcus on the use of hearsay in the report.
 {¶ 39} Further, Sheri alleges bias because David was responsible for the costs of the report. The court has discretion to allocate costs in custody proceedings. Moreover, the report was primarily based upon facts included in the record. The magistrate and trial court noted that Dr. Marcus' evaluation conformed with psychological standards and was "useful * * * in sorting out the allegations of the party." Merely because Sheri disagrees with the outcome and findings contained in the report, does not mean that the report was tainted. After review of the record and Dr. Marcus' report, we find no evidence of bias.
 {¶ 40} Sheri's third assignment of error is overruled.
 {¶ 41} Assignment of Error No. 4:
 {¶ 42} "THE TRIAL COURT ERRED IN NAMING FATHER AS THE RESIDENTIAL PARENT."
 {¶ 43} In her fourth assignment of error, Sheri argues the trial court erred by naming David as the residential parent. Sheri disagrees with the conclusions reached by the court and argues that "there is no testimony before the court that the children's needs have not been absolutely and adequately met by mother." Sheri emphasizes that she offers an environment which includes "engineers, doctors, teachers, and professionals all of higher levels of education" who will "set the best example possible for the children's achievements" *Page 10 
while David offers "the epitome of underachievement and slacking off." Sheri claims David's history of alcohol abuse, OVI conviction, disinterest in the children, and poor judgment weigh against the court's finding while "the only thing weighing in his favor is isolated old incidents of temper."
 {¶ 44} It is well-settled that a trial court is given broad discretion in its determination of parental custody rights, and the trial court's decision will not be disturbed unless it involves an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
 {¶ 45} R.C. 3109.04(E)(1)(a) provides, "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."
 {¶ 46} In this case, the magistrate stated, "the Court finds that acts arising from Mother and Stepfather's marital difficulties, and the evidence relating thereto, constitutes a change in circumstances." Specifically, the magistrate cited the domestic violence reports between Sheri and her husband and the argument between Sheri and the older daughter, which resulted in Sheri grabbing her daughter "by the chin, pulled her hair and choked her." Thereafter, the magistrate engaged in a thorough examination of the best interests of the children by reviewing all factors contained in R.C. 3109.04(F)(1) in awarding custody to David.
 {¶ 47} In reviewing the magistrate's decision, the trial court found, "Mother maintains that her past incidences of temper do not affect the best interest of the children, especially weighed against Father's previous disinterest toward the minor children and history of alcohol abuse. The Court finds that the Magistrate consulted many different sources, including Dr. *Page 11 
Marcus, in making the Decision. The Magistrate had an opportunity to view the credibility [sic] and demeanor of the witnesses. Furthermore, the Magistrate considered all relevant statutory factors in determining the best interests of the children."
 {¶ 48} After review of the record, we find no abuse by the trial court. The trial court and magistrate's decisions were supported by evidence in the record.
 {¶ 49} Sheri's fourth assignment of error is overruled.
 {¶ 50} Assignment of Error No. 5:
 {¶ 51} "THE TRIAL COURT ERRED IN NOT ORDERING ADDITIONAL PARENTING TIME FOR MOTHER."
 {¶ 52} In her fifth assignment of error, Sheri argues the trial court erred by failing to award additional parenting time. Sheri argues, "[t]here was no reason to order only standard parenting time." The record reflects and, we find no error as a result, that the court did deviate from the standard parenting schedule by awarding Sheri additional parenting time. Specifically, the magistrate found that the children would benefit from additional parenting time with Sheri and awarded two additional days of parenting time. The magistrate stated, "[t]he Court finds that Mother should receive more than just standard parenting time. Effective May 1, 2007, in addition to every other weekend, the Court orders that mother shall receive at least two parenting times during the week."
 {¶ 53} Accordingly, Sheri's fifth assignment of error is overruled.
 {¶ 54} Assignment of Error No. 6:
 {¶ 55} "THE TRIAL COURT ERRED IN NOT AWARDING ATTORNEY FEES TO MOTHER."
 {¶ 56} In her sixth assignment of error, Sheri urges that she is entitled to some attorney fees because David "is so wealthy he does not have to work at all — and still has potential for income of $80,000 or more," while Sheri has four children and a lower income. *Page 12 
Sheri urges that David has superior financial resources and should therefore pay her attorney fees regardless of the outcome of the case. Sheri argues that it is inequitable to require her to defend litigation on a semi-annual basis.
 {¶ 57} R.C. 3105.73(B) provides, "[i]n any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." The decision whether to award attorney fees is within the sound discretion of the trial court. Kitchen v.Kitchen, Butler App. No. CA2006-01-013, 2006-Ohio-6542, ¶ 24.
 {¶ 58} Sheri cites this court's decision in Kitchen, claiming that R.C. 3105.73(B) "obligates a court to award a party attorney fees in cases like this." We disagree.
 {¶ 59} In Kitchen, the wife had a gross annual income of $15,000, originating entirely from child support, while the husband had an imputed income of $131,000. Id. Moreover, the court in Kitchen found in favor of the wife on the merits. Id. at ¶ 19. Finally, we note that the court in this case found that David's income is $36,000 and refused to make a finding that he was underemployed, while Sheri's income is $30,000. Accordingly, we find no abuse of discretion by the trial court in denying Sheri's motion for attorney fees.
 {¶ 60} Sheri's sixth assignment of error is overruled.
 {¶ 61} Assignment of Error No. 7:
 {¶ 62} "THE TRIAL COURT ERRED IN CALCULATING CHILD SUPPORT."
 {¶ 63} In her seventh assignment of error, Sheri argues the trial court erred in its calculation of child support. Sheri urges that the court calculated child support based upon *Page 13 
David's salary as a teacher despite holding a master's degree and previously working as an engineer earning significantly more. Sheri claims David is voluntarily underemployed and his employment history compels the imputation of greater income for support purposes.
 {¶ 64} Whether a person is voluntarily underemployed and the amount of income to be imputed "are matters to be determined by the trial court based upon the facts and circumstances of each case." Rock v.Cabral (1993), 67 Ohio St.3d 108, paragraph one of the syllabus. A determination with respect to these matters will only be reversed upon a showing of abuse of discretion. Id.
 {¶ 65} After the magistrate's initial decision in this case, the trial court remanded the case because the magistrate "did not consider Father's `present earning ability.'" The court stated, "evidence is needed as to the availability of employment and the prevailing wage and salary levels in the geographic area in which Father resides." On remand, Sheri was given ample opportunity to present evidence relating to David's underemployment, yet failed to do so. The magistrate found, "Mother requests the Court find Father underemployed. The Court, however, is not convinced from the evidence presented, in the Cincinnati area, that employment or salary opportunities exist for an individual of Father's education and experience. Therefore, the Court finds, for child support purposes, Father's salary is $36,000."
 {¶ 66} On review, the trial court stated, "[t]he issue of income was remanded to the magistrate for a final determination. The parties were asked to present evidence of employment opportunities, specifically the availability of employment and the prevailing wage and salary levels. Mother had the opportunity to present evidence of same, but instead offered only her opinion. Mother incorrectly states the law of the case requires income be imputed to Father. The issue of imputation of income to Father was specifically remanded to the Magistrate." *Page 14 
 {¶ 67} The issue of the parties' income for child support purposes was clearly before the court. The trial court requested on remand that Sheri present evidence of employment opportunities. We recognize, as Sheri argues, that there is no specific requirement for expert testimony or market surveys to impute income; however, Sheri offered no evidence, other than her unsupported opinion, regarding David's job prospects.Justice v. Justice, Warren App. No. CA2006-11-134, 2007-Ohio-5186, ¶ 10. Sheri did not introduce any evidence of available employment opportunities in the area as requested by the court. See Williams v.Williams, Warren App. No. CA2006-09-103, 2007-Ohio-2996. Accordingly, Sheri failed to meet her burden of demonstrating David's underemployment.
 {¶ 68} Sheri next argues that she is entitled to a deviation of her child support obligation due to the increased parenting time and additional expenses incurred; again, based on the claim that David is the wealthier party.
 {¶ 69} A trial court's support calculation is "rebuttably presumed" to be correct if the trial court makes the proper calculations on the applicable worksheet. R.C. 3119.03. However, a court may deviate from these guidelines at its discretion, upon consideration of the statutory factors listed in R.C. 3119.23, and upon a determination that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. R.C. 3109.22; Carpenter v. Reis (1996),109 Ohio App.3d 499, 504. The party that attempts to rebut the basic child support guideline amount has the burden of presenting evidence which proves that the calculated award is unjust, inappropriate or not in the best interest of the child. Coleman v. Campbell, Geauga App. No. 2001-G-2401, 2002-Ohio-3841, at ¶ 12, citing Hurdelbrink v.Hurdelbrink (1989), 45 Ohio App.3d 5.
 {¶ 70} The trial court found, "[t]he record does not indicate that Mother received a significant amount of additional parenting time. * * * The Magistrate has considered all relevant factors. Specifically, Father, as the residential parent, now determines any `special *Page 15 
and unusual needs' of the children. The testimony does not indicate a significant disparity in income between the parties."
 {¶ 71} After review of the record, the analysis of the trial court, and our foregoing analysis, we find no abuse by the trial court in the calculation of child support and expenses. All relevant factors were fully considered by the lower court, finding that no deviation was warranted. Coleman at ¶ 16-17.
 {¶ 72} Sheri's seventh assignment of error is overruled.
 {¶ 73} Assignment of Error No. 8:
 {¶ 74} "THE TRIAL COURT ERRED IN NOT REIMBURSING MOTHER FOR CHILD RELATED EXPENSES INCURRED."
 {¶ 75} In her final assignment of error, Sheri argues the trial court erred in failing to reimburse her for past child-related expenses. Specifically, Sheri submitted a list of expenses which she seeks contribution from David, including private school tuition between 1999-2003, piano and music lessons, actual child care expenses, and medical and eye care bills.
 {¶ 76} Initially, we note that Sheri was actually awarded some of the expenses which she now claims the court denied. Specifically, the lower court ordered David to reimburse Sheri for child care expenses in the amount of $1,898.13. In addition, the magistrate found that expenses such as private school and music lessons had been previously litigated. "The Court finds the parties have been in Court on numerous occasions in the past regarding reimbursement of expenses and most recently as of August of 2006. The Court finds the parties had the opportunity to litigate the expenses * * * in prior hearings and will not, at this time, allow the parties to piecemeal their claims. Therefore, the Court considers the last hearing on expenditures, held on August 14, 2006, and any expenses incurred prior to that date, should not be considered for reimbursement." *Page 16 
 {¶ 77} The trial court agreed, holding "[t]he Court agrees that the parties had opportunities to previously litigate all expenses incurred prior to August 14, 2006. The parties must timely submit their claims for expenses or they will be waived. The collection and allocation are not barred `due to a random procedural dateline.' If a party was previously ordered to pay expenses to the other, a motion for contempt is the appropriate motion. As the residential parent, Father will determine what expenses are necessary. Mother cannot arbitrarily incur expenses and then request reimbursement."
 {¶ 78} After review, we find no abuse. Sheri attempts to relitigate many issues regarding expenses already determined by the court. If an order is in place, she should seek the appropriate remedy through a motion for contempt. Moreover, the magistrate held that many of the expenses were solely incurred by Sheri and are not subject to reimbursement. Sheri also admitted that many of these expenses were incurred on her own, feeling they were important for the children. David has done the same; solely incurring some expenses at his discretion including ski club and tutors.
 {¶ 79} Sheri's eighth assignment of error is overruled.
 {¶ 80} Cross-Assignment of Error No. 3:
 {¶ 81} "THE TRIAL COURT ERRED IN IMPUTING MOTHER'S INCOME AT $30,000."
 {¶ 82} Like Sheri's seventh assignment of error, David disagrees with the income credited to Sheri. David alleges that Sheri was involuntarily terminated from a job with a salary of $65,000. David argues that the trial court erred in reversing the magistrate's original imputation of income at $60,000.
 {¶ 83} As noted above, courts generally follow a two-step procedure when imputing income. First, there must be a finding that a parent is voluntarily unemployed or underemployed. Badovick v. Badovick (1998),128 Ohio App.3d 18, 23. Second, income *Page 17 
must be determined by evaluating prior work experience, education, any physical or mental disabilities, prevailing job opportunities and salary levels in the area where the parent resides, special skills or training, evidence of ability to earn income, special needs of the parent's children, or any other relevant factor. R.C. 3119.01(C)(11)(a).
 {¶ 84} Similar to our findings in Sheri's seventh assignment of error, David introduced no evidence of job opportunities and salary levels as requested by the trial court. David merely relied on the fact that Sheri's previous job garnered $65,000. Moreover, David never sought or requested a preliminary finding of underemployment by Sheri. As a result, we find no abuse in the trial court's use of Sheri's actual income in calculating support.
 {¶ 85} David's third assignment of error is overruled.
 {¶ 86} Cross-Assignment of Error No. 1:
 {¶ 87} "THE TRIAL COURT ERRED IN INCLUDING CHILD CARE EXPENSES IN THE CHILD SUPPORT CALCULATION."
 {¶ 88} Cross-Assignment of Error No. 2:
 {¶ 89} "THE TRIAL COURT ERRED IN DETERMINING THE AMOUNT OF CHILD CARE EXPENSES INCLUDED IN THE CHILD SUPPORT CALCULATION."
 {¶ 90} At the hearing, Sheri testified that she employs a nanny to assist in child care for $8,400. The trial court in this case required David to pay $4,200 towards the nanny for the care of their daughters during Sheri's parenting time. In his first and second cross-assignments of error, David takes issue with the trial court's award. David argues that the child care is not necessary for his daughters since they are old enough to care for themselves. David states that the "evidence actually supports a conclusion that the childcare costs were incurred solely for Mother's other two children." Additionally, David argues that, even if child care expenses are warranted, allocating half of the expenses to his daughters is improper since the nanny spends more time caring for Sheri's two other children. *Page 18 
 {¶ 91} After reviewing the record we find no abuse of discretion by the court. The magistrate and trial court found that child care expenses were necessary during Sheri's parenting time. Moreover, the testimony at trial provided by Sheri demonstrates that the daughters utilize the nanny's services a substantial amount of the time, especially requiring transportation. Both girls have a significant amount of after-school activities where a great deal of transportation is necessary. Sheri's other children, who are much younger, need very little transportation services. Additionally, Sheri testified that the daughters often bicker and still need supervision. As a result, we find no abuse by the trial court in requiring David to supply child care expenses in the amount of $4,200.
 {¶ 92} David's first and second assignments of error are overruled.
 {¶ 93} Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur. *Page 1